In re Michael CROSTON and Rosa Marie Martinez, Debtors.

Michael Croston and Rosa Marie Martinez, Appellants,

v.

Robert Davis, Chapter 7 Trustee, Appellee.

BAP No. AZ–04–1096–KMoB. Bankruptcy No. 03–01282–PHX–CGC.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued by Telephone Conference and Submitted on June 23, 2004.

Filed Aug. 6, 2004.

448

Michael Croston/Rosa Marie Martinez, Glendale, AZ, Pro se.

Edwin P. Lee, Law Offices of Edwin P. Lee, Phoenix, AZ, for Robert Davis, Ch. 7 Trustee.

Before KLEIN, MONTALI, and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

Bankruptcy Code § 706(a), which authorizes individual debtors to convert a chapter 7 liquidation case to one of the three reorganization chapters so long as the case has not previously been converted, provides that "[a]ny waiver of the right to convert a case under this subsection is unenforceable." 11 U.S.C. § 706(a). The issue is whether a court can deny a § 706(a) conversion motion for reasons not stated in § 706.

We conclude that § 706(a)'s anti-waiver language precludes barring debtors from exercising their one-time right to convert for reasons other than, as stated in § 706, a prior disqualifying conversion or ineligibility for relief under the particular chapter. Doubts about success in the converted case should be resolved post-conversion. The court can redress dishonest exploitation of the right to convert through its statutory powers to convert the case back to chapter 7 and to award chapter 7 administrative expenses that must be paid under a plan.

In addition, the notice to these debtors that there would be a hearing on their § 706(a) motion was prejudicially defective.

Hence, we REVERSE and REMAND the order denying the motion to convert the case to chapter 13.

## FACTS

The debtors filed a chapter 7 bankruptcy petition on January 27, 2003, listing their address at a location in Peoria, Arizona.

On September 8, 2003, the debtors, complying with the duty imposed by Federal Rule of Bankruptcy Procedure 4002(5), filed a change of address to a location in Glendale, Arizona.

They also filed on September 8, 2003, a motion to dismiss their chapter 7 case.

The trustee opposed dismissal. He was suing to recover an alleged intentionally fraudulent transfer of property with equity of about $60,000. The court had ruled early in the case that it was filed in "bad faith." During the case, the debtors had filed and then dismissed a separate chapter 13 case. Debtor Michael Croston had not complied with an order for an examination under Federal Rule of Bankruptcy Procedure 2004.

The court declined to dismiss and denied a reconsideration motion per Federal Rule of Civil Procedure 59, as incorporated by Federal Rule of Bankruptcy Procedure 9023, on January 8, 2004.

On January 9, 2004, the debtors filed the § 706(a) motion to convert to chapter 13 and, later that day, the trustee filed a complaint to deny discharge under 11 U.S.C. § 727.

Although Federal Rule of Bankruptcy Procedure 1017(f)(2) does not require a hearing on a § 706(a) conversion motion, the clerk of court set the motion for a February 4, 2004, hearing after the trustee filed an objection to the motion.

Ignoring the filed change of address to Glendale, Arizona, the clerk of court issued a Notice of Hearing, dated January 28, 2004 (and mailed by the Bankruptcy Noticing Center in Virginia on January 30, 2004), to the debtors at their former address.

The debtors did not receive the mailed notice before February 4, and did not appear at the appointed time that day.

After the trustee's attorney argued the opposition (which did not contest eligibility for chapter 13 relief), the court made findings inferring bad faith by the debtors for a variety of reasons (including their absence from the hearing), questioned their ability to propose a confirmable chapter 13 plan in view of the need to pay at least $60,000 in order to satisfy the best interest test, and concluded that "[t]his is one of those unusual cases where the debtor's right to convert is not absolute, but in fact in the exercise of my discretion it should be denied."

This appeal ensued.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

1. Whether it was an abuse of discretion to deny the debtors' § 706(a) motion to convert from chapter 7 to chapter 13.

2. Whether debtors received adequate notice of hearing.

## STANDARD OF REVIEW

■■■ We review an order regarding conversion of a case for abuse of discretion. *Beatty v. Traub (In re Beatty)*, 162 B.R. 853, 855 (9th Cir. BAP 1994). A bankruptcy court abuses its discretion if it bases its ruling upon an erroneous view of the law. *Id.*

## DISCUSSION

### I

As this is a situation in which the basic eligibility of the debtors for chapter 13 relief under the standards specified in 11 U.S.C. § 109(e) is not contested, the key substantive question is whether exercise of the § 706(a) conversion right can be qualified on account of a debtor's perceived bad faith or by doubts that a confirmable chapter 13 plan could be proposed. A procedural aspect also informs this analysis.

### A

■■■ The substantive hurdle to overcome when imposing conditions on the right to convert was erected by Congress in the second sentence of § 706(a): "Any waiver of the right to convert a case under this subsection is unenforceable." 11 U.S.C. § 706(a).

The legislative history of § 706(a) suggests that Congress regarded § 706(a) as absolute:

Subsection (a) of this section gives the debtor the one-time *absolute* right of conversion of a liquidation case to a reorganization or individual repayment plan case. If the case has already once been converted from chapter 11 or 13 to chapter 7, then the debtor does not have that right. The policy of the provision is that the debtor should always be given the opportunity to repay his debts, and a waiver of the right to convert a case is unenforceable.

S.Rep. No. 95–989, at 94 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5880 (emphasis supplied); *accord* H.R. Rep. No. 95–595, at 380 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6336 (there was no chapter 12 in 1978).

There is a "no lose" rationale for the right to convert. All of the reorganization chapters require that creditors receive at least as much as would be paid in a chapter 7 liquidation. 11 U.S.C. §§ 1129(a)(7)(a)(ii), 1225(a)(4) & 1325(a)(4).

The strength of the legislative history language led us to conclude in 1985 that it is permissible to convert a case to chapter 13 after the entry of a judgment determining a debt to be nondischargeable. *Street v. Lawson (In re Street)*, 55 B.R. 763, 765 (9th Cir. BAP 1985). Although our panel in *Street* did not have to reach the broader question presented in this appeal, the tenor of its analysis is that neither conduct nor motive vitiates the absolute nature of the § 706(a) right to convert.

More to the point, our 1994 *Beatty* decision dealt with the substantially identical anti-waiver language in chapter 13's corollary, § 1307(b), which authorizes a debtor to dismiss a chapter 13 case that has not previously been converted. 11 U.S.C. § 1307(b).[1] We held that the § 1307(b) anti-waiver language does not admit of exceptions. *Beatty*, 162 B.R. at 857.

In *Beatty*, the bankruptcy court announced a decision to convert the chapter 13 case to chapter 7 case and directed the moving creditor to prepare an order. The debtor, however, got to the clerk's office first and filed a motion to dismiss the case pursuant to § 1307(b), which was granted as a matter of routine and then vacated when the conversion order was entered. We reversed, holding that § 1307(b) requires that a chapter 13 case be dismissed so long as the debtor's request is made prior to the entry of an order converting the case. *Beatty*, 162 B.R. at 857.

In *Beatty*, we described a split of authority in which some courts reason that Congress could not have meant for bad actors to have unfettered power to dismiss the case but concluded:

[t]he better reasoned view is that a court must dismiss the case upon the debtor's request for dismissal under section 1307(b) if that request is made prior to the effective time of an order converting the case to Chapter 7. This view comports with the plain language of section 1307[ (b) ] which states that the court "shall" dismiss the case upon the debtor's request as well as the purposes of Chapter 13 and the voluntary nature of relief under that Chapter.

*Beatty*, 162 B.R. at 857, *citing Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1413 (9th Cir.1985) (absolute right—dictum).

Since the § 706(a) anti-waiver language ("Any waiver of the right to convert a case under this subsection is unenforceable") is indistinguishable from the parallel language of § 1307(b) ("Any waiver of the right to dismiss under this subsection is unenforceable"), it follows that the analysis of the absolute nature of § 1307(b) applies to the same question under § 706(a).

Thus, *Beatty* compels us to conclude that the § 706(a) right to convert to chapter 13 is effectively absolute in the same manner as the corollary dismissal right under § 1307(b). Moreover, we continue to think *Beatty* was correctly decided.

We agree with the courts that view the § 706(a) right to convert as absolute. *E.g., Mason v. Young (In re Young)*, 237 F.3d 1168, 1173 (10th Cir.2001); *Finney v. Smith (In re Finney)*, 992 F.2d 43, 44–45 (4th Cir.1993); *Martin v. Martin (In re Martin)*, 880 F.2d 857, 859 (5th Cir.1989); *Miller v. United States Trustee (In re Miller)*, 303 B.R. 471, 477 (10th Cir. BAP 2003); *In re Barnes*, 275 B.R. 889, 893 (Bankr.E.D.Cal.2002). All three courts of appeals that have ruled on the issue take this absolute right approach.

---

1.  That section provides:
    (b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.
    11 U.S.C. § 1307(b).

We are not persuaded by decisions that deny § 706(a) motions in order to foil perceived dysfunction. *E.g., Kuntz v. Shambam (In re Kuntz),* 233 B.R. 580, 583 (1st Cir. BAP 1999); *In re Krishnaya,* 263 B.R. 63, 69 (Bankr.S.D.N.Y.2001) (collecting cases); *In re Starkey,* 179 B.R. 687 (Bankr.N.D.Okla.1995). Despite the common sense of those decisions, dysfunction can be remedied without denying the absolute right to convert.

■ One remedy for addressing bad faith manipulation lies in the fact that there is no absolute right to remain in the chapter to which the case is converted. Thus, a case that is converted to chapter 11, 12, or 13 under § 706(a) is nonetheless vulnerable to conversion back to chapter 7 for "cause." 11 U.S.C. §§ 1112(b), 1208(c) & 1307(c); *Finney,* 992 F.2d at 45–46; *Barnes,* 275 B.R. at 894–95. Facts that are sufficiently egregious to support an argument that the § 706(a) conversion right should be overridden ought to make it easy to demonstrate "cause" for reconverting the case to chapter 7.

■ Nor does the reconversion process necessarily introduce inordinate delay. Parties in interest can make a reconversion motion as soon as they learn of conversion. Likewise, the court is even entitled to raise the § 1307(c) conversion issue on its own motion and has substantial control over matters of timing. 11 U.S.C. § 105(a);[2] *Finney,* 992 F.2d at 45–46.

■ When (as often) § 706(a) conversion comes after substantial work by the trustee, the court may award chapter 7 administrative expenses that must be fully paid in a chapter 13 plan. 11 U.S.C. §§ 503(b), 507(a) & 1322(a)(2); *Barnes,* 275 B.R. at 892–93.

### B

■ The question next arises why the rules of procedure require a motion to convert under § 706(a) if the right to convert is absolute. Fed. R. Bankr.P. 1017(f)(2).[3] The answer is that the statute imposes prerequisites, the failure of which may require denying the motion. The Bankruptcy Code provisions covered by Rule 1017(f)(2) all involve conversions or dismissals that are automatic only if preconditions are met. Some sections preclude prior conversions. 11 U.S.C. §§ 706(a), 1112(a), 1208(b) & 1307(b). The debtor must be eligible to be a debtor under the chapter to which conversion is sought. 11 U.S.C. § 706(d).[4] In the case

---

**2.** The second sentence of § 105(a) provides:

(a) ... No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

**3.** Rule 1017(f) provides:

(1) Rule 9014 governs a proceeding to dismiss or suspend a case, or to convert a case to another chapter, except under §§ 706(a), 1112(a), 1208(a) or (b), or 1307(a) or (b).

(2) Conversion or dismissal under §§ 706(a), 1112(a), 1208(b), or 1307(b) shall be on motion filed and served as required by Rule 9013.

(3) A chapter 12 or chapter 13 case shall be converted without court order when the debtor files a notice of conversion under §§ 1208(a) or 1307(a). The filing date of the notice becomes the date of the conversion order for the purposes of applying § 348(c) and Rule 1019. The clerk shall promptly transmit a copy of the notice to the United States trustee.

Fed. R. Bankr.P. 1017(f).

**4.** That section provides:

(d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

of an individual's conversion to chapter 13, eligibility turns upon debt limits. 11 U.S.C. § 109(e).[5]

The purpose of the Rule 1017(f)(2) requirement of a motion, then, is to afford a procedure for assuring that the statutory prerequisites for the pertinent conversion or dismissal are satisfied. Such a motion may be denied only if a formal statutory prerequisite is wanting. Thus, Rule 1017(f)(2) invokes Rule 9013, which ordinarily does not entail a hearing.

The sense of the structure of the rules is apparent from examination of the other two subparts of Rule 1017(f). Since conversion by the debtor of a chapter 12 or 13 case to chapter 7 is truly automatic, Rule 1017(f)(3) makes the conversion automatic upon the filing of a notice of conversion. 11 U.S.C. §§ 1208(a) & 1307(a); Fed. R. Bankr.P. 1017(f)(3). All other conversion and dismissal matters are treated as contested matters under Rule 9014. Fed. R. Bankr.P. 1017(f)(1).

In sum, the motion required by Rule 1017(f)(2) for seeking a § 706(a) conversion is a motion that can be denied only for a reason stated in § 706. *Miller,*

303 B.R. at 477–78. If there has been a prior conversion, the motion flunks § 706(a). Likewise, § 706(d) precludes conversion to chapter 13 for debtors who do not meet chapter 13 eligibility standards set out at § 109(e). 11 U.S.C. § 706(d).

Although the trial court mentioned eligibility in its findings, the context did not involve the § 109(e) debt limits or whether the debtors had regular income. Rather, the context was whether the debtors would succeed in having a plan confirmed because the court doubted that the debtors' regular income would be enough to fund a plan that would have to pay at least $60,000 in order to satisfy the best interest test of § 1325(a)(4).

Since funding for a chapter 13 plan can come from liquidation of property where the debtor's regular income is not sufficient to meet confirmation standards, the prospective ability to propose a confirmable plan is too uncertain to be an eligibility issue. 11 U.S.C. § 1322(b)(8).[6] At best, inability (or unwillingness, given the voluntary nature of § 1322(b)(8)) to propose a confirmable plan, is a reconversion issue.[7]

---

11 U.S.C. § 706(d).

**5.** Chapter 13 is limited to the following debtors:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $290,525 and noncontingent, liquidated secured debts of less than $871,550 or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $290,525 and noncontingent, liquidated secured debts of less than $871,550 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e). The respective debt limits rose, effective April 1, 2004, to $307,675 and $922,975 per 11 U.S.C. § 104(b).

**6.** A chapter 13 plan "shall—(1) provide for the submission of all or such portion of future earnings or other future income of the debtor ... as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). In addition, a chapter 13 plan "may—(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor [e.g., exempt property]." *Id.* § 1322(b)(8).

**7.** Demonstration that a debtor is unable or unwilling to propose a confirmable chapter 13 plan, would be probative of whether there is "unreasonable delay by the debtor that is prejudicial to creditors" that is a statutory ground for cause to convert or dismiss, "whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1307(c)(1).

While it may seem unnecessarily formalistic to require that one go through the drill of conversion and reconversion when reconversion appears to be a foregone conclusion (as here, where the debtors gave the court good reason to be exasperated), we think that is the balance struck by Congress. Sometimes, a problem debtor surprises everyone and winds up confirming and performing a chapter 13 plan that pays creditors more than they would receive in chapter 7 and leaves everyone better off.

## II

■ The debtors also complain that they did not receive notice that there would be a hearing on their § 706(a) motion. Indeed, notice defects relating to address and time of service support the debtors' contentions.

As noted, Rule 1017(f)(2) prescribes a § 706(a) conversion procedure that requires the filing and service of a motion that is to be governed by Rule 9013 and that is not automatically a contested matter under Rule 9014. Fed. R. Bankr.P. 1017(f)(2).

■ The consequence of not being automatically subjected to Rule 9014 is that there is a presumption that a hearing will not be held unless the court so orders; this was the specific purpose of the 1987 amendment to Rule 1017 that created categories of conversion and dismissal motions. Fed. R. Bankr.P. 1017, advisory committee's note to 1987 amendments.[8]

Thus, when the debtors filed their § 706(a) motion, the presumption was that there would be no hearing. Once the trustee filed an opposition, the clerk of court, acting on behalf of the court, set the matter for hearing to be held on February 4, 2004, and generated a notice dated January 28 and mailed January 30 through the Bankruptcy Noticing Center to an obsolete address.

The filing of the trustee's opposition to the § 706(a) motion created an actual dispute that triggered application of Rule 9014, which requires that motions be served in the manner provided for service of a summons and complaint by Rule 7004 and that any paper after the motion be served "in the manner provided by Rule 5(b) F.R.Civ.P." Fed. R. Bankr.P. 9014(b).

The notice of the hearing set by the court on the debtors' motion constituted a paper served after the motion that, because the debtors were not represented by an attorney, had to be served on them by any of the means permitted by Civil Rule 5(b). Since it was by mail, it had to be sent "to the last known address of the person served." Fed.R.Civ.P. 5(b).[9]

8. The advisory committee note explained:

Subdivision (d) [f] is amended to provide that dismissal or conversion pursuant to §§ 706(a), 707(b), 1112(a), and 1307(b) is not automatically a contested matter under Rule 9014. Conversion or dismissal under these sections is initiated by the filing and serving of a motion as required by Rule 9013. No hearing is required on these motions unless the court directs.

Fed. R. Bankr.P. 1017, advisory committee note to 1987 amendments (subdivision (d) became subdivision (f) in 1999).

9. Civil Rule 5(b) provides:

(b) Making Service

(1) Service under Rules 5(a) and 77(d) on a party represented by an attorney is made on the attorney unless the court orders service on the party.

(2) Service under Rule 5(a) is made by:

(A) Delivering a copy to the person served by:

(I) handing it to the person;

(ii) leaving it at the person's office with a clerk or other person in charge, or if no one is in charge leaving it in a conspicuous place in the office; or

(iii) if the person has no office or the office is closed, leaving it at the person's

The last known address of the debtors for purposes of mailing notices under Civil Rule 5(b) was the address designated by the debtors in the change of address that they filed with the court on September 8, 2003, pursuant to the duty imposed by Rule 4002(5) on debtors to file a statement of any change of the debtor's address. Fed. R. Bankr.P. 4002(5).[10]

Here, the Notice of Hearing was not mailed to the debtors at the address specified in the change of address filed with the court. Rather, it was mailed to the address originally listed on the petition. This did not comply with Civil Rule 5(b).

The second problem is that the timing of the notice of hearing was shorter than the minimum time required by the rules absent a formal shortening of time by the court. The clerk of court, on January 28, fixed the hearing for February 4, and the Bankruptcy Noticing Center served the notice by mail on January 30. This was less notice than required by Rule 9006(d) in the absence of an order shortening time.

Rule 9006(d) requires that "notice of any hearing shall be served not later then five days before the time specified for such hearing, unless a different period is fixed by these rules or by order of the court." Fed. R. Bankr.P. 9006(d).[11]

Since the bankruptcy time computation rule excludes intermediate Saturdays, Sundays, and legal holidays whenever a prescribed period is less then eight days, service of notice on January 30 for a February 4 hearing constitutes less than five days of notice.

That the court had not shortened time to less than five days is evident from the

---

dwelling house or usual place of abode with someone of suitable age and discretion residing there.

(B) Mailing a copy to the last known address of the person served. Service by mail is complete on mailing.

(C) If the person served has no known address, leaving a copy with the clerk of the court.

(D) Delivering a copy by any other means, including electronic means, consented to in writing by the person served. Service by electronic means is complete on transmission; service by other consented means is complete when the person making service delivers the copy to the agency designated to make delivery. If authorized by local rule, a party may make service under this subparagraph (D) through the court's transmission facilities.

Fed.R.Civ.P. 5(b), *incorporated by* Fed. R. Bankr.P. 9014.

**10.** Where the item mailed is a paper initiating a Rule 9014 "contested matter," the requirement to honor the filed change of address is even more explicit. The motion "shall be served in the manner provided for service of a summons and complaint by Rule 7004." Fed. R. Bankr.P. 9014(b). Where service is by mail, service upon a debtor is governed by Rule 7004(b)(9):

(9) Upon the debtor, after a petition has been filed by or service upon the debtor and until the case is dismissed or closed, by mailing a copy of the summons and complaint to the debtor at the address shown in the petition or statement of affairs or to such other address as the debtor may designate in a filed writing and, if the debtor is represented by an attorney, to the attorney at the attorney's post-office address.

Fed. R. Bankr.P. 7004(b)(9).

**11.** Since the notice did not satisfy the minimum time specified in Rule 9006(d), we need not consider whether Rule 2002(a)(4) actually required twenty days of notice:

Except as provided in subdivisions (h), (i), and (1) of this rule, the clerk or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 20 days' notice by mail of: . . .

(4) in a chapter 7 liquidation, a chapter 11 reorganization case, or a chapter 12 family farmer debt adjustment case, the hearing on dismissal of the case or the conversion of the case to another chapter, unless the hearing is under § 707(a)(3) or § 707(b) or is on dismissal of the case for failure to pay the filing fee.

Fed. R. Bankr.P.2002(b)(4).

colloquy between the court and trustee's counsel on February 4: "Mr. Lee, what are you doing here? I don't show you on the calendar."

It is also evident that the debtors' absence from the hearing was specifically held against them: "further, based upon the failure to prosecute by his not being here" for the hearing. In other words, the error in notice potentially affected the outcome and was prejudicial.

■ We reject the trustee's argument that the debtors had a duty to monitor the docket to determine whether a hearing had been set on their § 706(a) motion. The fact that the rules create a presumption that there will not be a hearing on a § 706(a) motion vitiates whatever duty may exist to monitor the docket.

In short, the debtors were not provided with notice that was reasonably calculated to provide them with an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). They cannot be disadvantaged on that account.

\*     \*     \*     \*     \*     \*

■ The court applied an erroneous standard, and hence abused discretion, when it denied for subjective reasons the § 706(a) motion of debtors who meet the objective criteria for chapter 13 relief. While subjective factors may be grounds for promptly reconverting the case from chapter 13 to chapter 7 after remand, they do not support denial of the conversion motion.

In addition, the clerk's notice to the debtors that a hearing would be held on their § 706(a) motion was sufficiently defective that remand would be required even if the court could deny such a motion for subjective reasons.

REVERSED and REMANDED for further proceedings.